## Duncan *against* Duncan.

Whether an instrument of writing be under seal or not, is a question of law to be solved by the court from the inspection of the paper itself.

An horizontal slit in the parchment upon which a conveyance is written, with a ribbon drawn through it opposite the name of the justice before whom the acknowledgement was made, is not a sufficient seal to constitute a deed.

The acts of assembly of the 28th of May 1715, 24th of February 1770, 18th of March 1775, and the 18th of March 1814, providing a mode for taking the acknowledgement of deeds by justices, aldermen and judges, are all *in pari materia*; and their construction requires that the acknowledgement taken by any of these officers should be certified under their hand and seal, in order to justify the recording of the deed, or make it admissible in evidence without the common law proof of its execution.

APPEAL from the circuit court of *Dauphin* county, held by Justice *Rogers*.

This was an action of ejectment for an island at the junction of the Susquehanna and Juniata rivers, by *Stephen Duncan* against *Rebecca Duncan*.

The plaintiff, in order to support his title, gave in evidence the

[Duncan v. Duncan.]

will of the honourable *Thomas Duncan*, containing this clause: "my island, bought of *John Reed*, at the mouth of the Juniata, I desire to be appraised by three persons, to be selected by my executors, and if my son *Stephen* will accept the same at the valuation, then it is to be conveyed to him in fee simple, he securing the purchase money by mortgage on the premises, which purchase money is to be considered as part of my estate; if he refuses to take it, then it is to be sold by my executors." He then gave in evidence, the appointment of the appraisers; their valuation of the property; and his acceptance of the same at the valuation; and then offered in evidence a conveyance from *Martha Duncan*, executrix, *Edward J. Stiles* and *John D. Mahon*, executors of *Thomas Duncan*, esquire, deceased, to *Stephen Duncan*. This conveyance was signed by the grantors, and opposite the name of each, there was an horizontal slit in the parchment on which it was written, and a blue ribbon was drawn through, extending along all the names. The acknowledgement by *John D. Mahon* and *Edward J. Stiles*, was made before a justice of the peace, and that of *Martha Duncan* was made before the *Chief Justice*, and the certificate of each, in the body of it, purported to be under their hands and seals, but the seals were such as those opposite the names of the grantors. The ribbon was not attached to the parchment otherwise than that it passed through the slits in the parchment.

The defendant objected to this conveyance, on the ground that it was not sealed and that the certificate of the justice of the peace and that of the chief justice were not under seal. These objections were sustained by the court, and the plaintiff took a nonsuit, which he afterwards moved the court to take off, and assigned these reasons:

1. The court erred in rejecting the conveyance offered in evidence.

2. The plaintiff should have been permitted to maintain his action upon the evidence given, without the conveyance.

The court overruled the motion, and the defendant appealed. The same reasons were assigned in this court.

Attorney-General *Lewis*, *Foster* and *Weidman*, for appellants, cited, the acts of assembly of the 28th of May 1715, 24th of February 1770, 18th of March 1775, and 18th of March 1814, and contended that the act of the 28th of May 1715, was the only one which required that the certificate should be under the seal of the justice. Upon the passage of this act, a justice of the peace was the only officer who had power to take the acknowledgement of a deed; but when that power was extended to judges, and subsequently to aldermen, the acts of assembly do not require that the certificate should be under seal; it was a mere matter of form, which the legislature deemed proper to dispense with. And that a seal is not necessary to the validity of an acknowledgement by a judge, is settled by the case of *Whitmire* v. *Napier*, 4 *Serg. & Rawle* 290.

But these certificates *were* sealed. In Pennsylvania, a seal need

[Duncan v. Duncan.]

not be composed of wax, or ink, or any other material; if the intention of the party to affix a seal to his name manifestly appears, it is all the law requires.    On this point were cited, 1 *Dall.* 63; 6 *Mod.* 45; 1 *Wash. C. C. Rep.* 42; 2 *Caines's Rep.* 362.    The plaintiff's counsel also contended, that whether the certificates were sealed or not, was a matter of fact which should have been referred to the jury to determine.    The plaintiff should have been permitted to maintain his action upon the evidence given: the devise was proved; the appraisement was made; and he had accepted; so that every thing was done to entitle him to a conveyance, which a court of chancery would have compelled the executor to make; and if so, he could recover, in ejectment, without a conveyance.

*Watts* and *M'Clure*, for appellees.

A seal is essential to the validity of a deed.    *Jackson* v. *Wood*, 12 *Johns. Rep.* 72; *Warren* v. *Lynch*, 5 *Johns. Rep.* 239; *Holliday* v. *Marshall*, 7 *Johns. Rep.* 211; 2 *Black. Comm.* 227, 312; *Wood's Conv.* 125, *Powel's Ed.*; *Co. Litt.* 35; 4 *Kent's Comm.* 450.    So long as there remains a distinction in the forms of action, it will be necessary to maintain a broad line of difference between that which is a sealed instrument, and that which is not.    The courts have gone very far, in Pennsylvania, to give a flourish with a pen the character of a seal; but, to go further, would be to lose sight of what was or was not a seal.    5 *Binn.* 241.    The certificates were not under the seals of the officers.    It is essential that a seal be so permanent and durable, that no difficulty can arise in determining whether the instrument be sealed or not.    It must be tried by inspection, and by the court.    The slit in the parchment cannot be called a seal; the riband seen through it cannot be so called; nor can both together; for although together now, they may not be so long.    A recorder would be authorized to put the deed on record, if the riband and slit made a seal; but if the riband should fall out, he would not.

The plaintiff's second point was not made in the court below; he did not offer to let his cause go to the jury, upon the evidence given, without the conveyance.    But if he had, he could not have recovered.    Conditions annexed to the exercise of a power, must be complied with strictly, however unessential they may be: the person creating the power may impose what checks he pleases.    If a deed be required, it cannot be executed by will.    4 *Kent's Comm.* 330.    The will directs that a *conveyance* shall be made to the plaintiff; and this is the language of one who well knew the meaning of technical terms.

The opinion of the Court was delivered by

KENNEDY, J.—This is an appeal from the decision of the circuit court, lately held at Harrisburgh, for Dauphin county.    On the trial of the cause before his honour, Mr Justice *Rogers*, the plaintiff offered to read in evidence an instrument of writing, purporting to be a con-

veyance from *Martha Duncan*, executrix, *Edward J. Stiles* and *John D. Mahon*, executors of the last will of the late Hon. *Thomas Duncan*, deceased, to *Stephen Duncan*, the plaintiff: which was objected to by the counsel of the defendants, because the certificate of the acknowledgement of the execution thereof, by *Martha Duncan*, which appeared to have been taken by the chief justice of this court, and the certificate of the like acknowledgement of *Edward J. Stiles* and *John D. Mahon*, the other grantors, which appeared to have been taken by *Archibald Ramsay*, stating himself, in the body of the certificate, to be a judge of the court of common pleas of Cumberland county, in this state, but who was, in fact, only a justice of the peace of that county, were given by these officers, respectively, under their hands merely, without being under their seals. ·

Two questions have been raised upon the argument. First, Whether, in point of fact, a seal is not affixed to each of the certificates? And second, If not, whether it be requisite, under our recording acts, that such certificate should be given under the *seal* of the officer taking the acknowledgement?

The body of the conveyance, and the certificates, appeared all to have been drawn in the same handwriting. The conveyance is written on parchment, in the margin of which, at the end of the name of each of the grantors, and of the officers respectively subscribed to the certificates of acknowledgement, incisions or slits are made, in an horizontal direction, apparently with a knife, and a blue riband weaved through them by the scrivener, who, no doubt, intended that the riband, which covered about five-eighths of an inch square of the parchment, at the end of each name, should, at the time of signing, have been been covered with a seal of wax, and by means thereof, have been attached to or incorporated with the parchment, which was neglected. In the conclusion of the conveyance, the words, "we have set our hands and affixed our seals" are inserted; and likewise in each of the certificates, it is stated to have been given "under my hand and seal," but no scroll, wax, wafer, or any thing more than the riband is used, as already mentioned, to denote a seal affixed to any of the signatures.

It has been contended that the riband inserted in the parchment, in the manner described, was sufficient in law to constitute a seal, if so intended by the party; and that it ought, therefore, to have been received in evidence, and submitted to the jury as a matter of fact to be decided on by them, whether the riband was used with that intent or not.

This argument may be ingenious, and, at first view, somewhat plausible; but a moment's reflection will show, as it appears to me, that it is not solid, and cannot answer the design of the law in regard to seals. I apprehend that whether an instrument of writing be under seal or not, is a question of law to be solved by the court from the inspection of the instrument itself. It is highly important to the interests of society, that every man should be able to determine with

[Duncan v. Duncan.]

certainty upon looking at an instrument of writing, whether, if genuine, it is a deed or not, that is, whether it has what the law denominates a *seal* affixed to it or not; but it must be obvious that unless the true character of a seal is fixed by the law, which is uniform and certain, and may be known by every one, it will be oftentimes impossible to determine whether an instrument of writing is a deed or not. If parties are permitted to substitute any mark or device which their imagination may suggest for a seal, and it is to be made a question of fact to be decided by a jury whether it was so intended or not; it will not only introduce great confusion and uncertainty, but a principle which cannot be carried into effect without repealing some of the provisions of our statutes providing for the recording of deeds.

Every recorder of deeds and conveyances of land within the state, is bound to make a true and faithful record of all such as shall be handed to him for that purpose, after that they have been duly acknowledged or proved; but if the law is not to determine what shall constitute a seal—which is the distinguishing characteristic of a deed from other instruments of writings—without the intervention of a jury, how is the recorder to decide whether he shall record it as a deed or not? that is, with the seal of the party affixed to it or without it? It is obvious that unless the question, What shall be considered a seal? be referred to the law, to be settled by some fixed rule determining its precise character; that every recorder of deeds must be left to decide the matter according to what he might conjecture was the intention of the party or parties. It could, at most, be only conjecture, for he must necessarily decide without evidence, as he has no means of obtaining it; which would be productive of confusion and uncertainty. The same conveyance, for instance, includes several tracts of land, lying in different counties of this state, and the grantee, for his greater security, has it recorded in each of the several counties; but the recorders entertaining different opinions in regard to its being a sealed instrument or not, some of them record it with a seal, and others record it without a seal. By some means the original happens to be lost, in which case the record must be resorted to, as the only existing evidence; but upon recourse being had to it, and it appearing to be without a seal of the grantor affixed to it, a grave question then arises, whether any title in the land has been transferred by it, inasmuch as it is not a deed? Again, an exemplification of it, with a seal affixed to the name of the grantor, is produced from another county, which by our recording acts is made evidence of as high a nature as the original itself; which presents another question between these conflicting records, Which of them shall prevail? And in the last place, I would ask, how the rule that is contended for here, that a jury shall decide whether a seal has been affixed or not, can be carried into effect, when an exemplification only is produced, and which will be produced in all cases where it is conceived that it will answer the purpose of the party better than the original,

[Duncan v. Duncan.]

because, by the express terms of the recording act of 1715, it is made equally good and available evidence as the original? It is easy to perceive that without the production of the original, it would be utterly impracticable in many cases to have the question of seal or no seal decided by the jury. Hence, confusion, uncertainty and impracticability would all seem to be the consequences of attempting to carry such a principle into operation. Happily, however, the law is well settled otherwise. It has defined precisely what the seal of a party to a deed shall be or consist of.

An impression upon wax or something of the kind, or the wax itself, was the only kind of seal known to the common law of that country, whence we have derived our common law. 2 *Bl. Com.* 309, 310. In addition to this, we have, by immemorial use and custom, adopted as a seal a scroll made with ink. It is in such general use that there are but few, I think, who are not intimately acquainted with its character and appearance, and therefore well suited to become part of our law on this subject; and to support the decisions recognizing it as such in *M'Dill and Lee* v. *M'Dill,* 1 *Dall.* 63, and *Long* v. *Ramsay,* 1 *Serg. & Rawle* 72. In using even a scroll for a seal, it would seem to be proper, or at least prudent, not to depart from the common form which is generally used in making it, so that no possible doubt may be raised of its having been intended for a seal; for, according to the principles laid down in *Taylor* v. *Glaser,* 2 *Serg. & Rawle* 502, unless a seal, such as is known to and recognized by the law, be affixed to the name of the party, it will not be considered a deed, although some other device may be substituted for a seal, and the words "in witness whereof I have hereunto set my hand and affixed *my seal,*" may be used in the attestation. It is said by the late Chief Justice, in that case, that without the seal, these words will not make a deed, though the seal will make it such without the words; which goes to show the importance and necessity of the seal being something that is known to every one to be used for that purpose. In Virginia it was thought that the common law had defined what should be a seal with so much precision and certainty, that the legislature deemed it necessary to pass a statute to authorize a scroll to be used for that purpose. See 2 *Tuck. Bl.* 306, in note.

We are therefore decidedly of opinion that it belonged to the court to determine in this case, by an inspection of the certificates of acknowledgement, whether they were given under the seals of the respective officers or not, and that it was correct in deciding that they were not under seal.

I come now to the consideration of the next question: which is, Was it necessary that the certificates should have been given under seal, in order to make the conveyance admissible in evidence, according to the provisions of our acts of assembly on this subject?

The first act, and the only one which directs the manner in which the acknowledgements or probates of deeds and conveyances shall

[Duncan v. Duncan.]

be certified, was passed on the 28th of May 1715, and is entitled " an act for acknowledging and recording of deeds." This act, after empowering justices of the peace of the proper county or city where the lands lie to take the acknowledgement of the grantor named in the deed and conveyance, or in case he be dead or can not appear, then to receive proof of the execution thereof from two or more of the witnesses who were present at the time, directs in the third section thereof, that the justice taking the acknowledgement on proof shall thereupon " under his hand and seal certify such acknowledgement on proof, &c.," which after being done, the deed may, according to other provisions of the act, be enrolled in the recorder's office of the county where the lands lie : and this being done, it is enacted by the fifth section, that " the copies or exemplifications of all deeds so enrolled, being examined by the recorder and certified under the seal of the proper officer (which the recorder or keeper thereof is thereby required to affix thereto), shall be allowed in all courts where produced, and are thereby declared and enacted to be as good evidence, and as valid and effectual in law as the original deeds themselves, or as bargains and sales enrolled in the said courts of Westminster Hall (which courts are mentioned in a preceding part of the section for another purpose), and copies thereof can be, and the same may be showed, pleaded, and made use of accordingly." This act has ever been considered as authorizing, by necessary implication, the original deed, after it has been acknowledged or proved in conformity to its directions, to be given in evidence on the trial of a cause where it may be relevant, without other proof being offered of its execution ; and it has been adjudged admissible without being recorded. *M'Dell and Lee* v. *M'Dell*, 1 *Dall.* 63, and *Hamilton and Lee* v. *Gallaway*, *Ibid.* 93.

From the express terms of this act, the certificate of the acknowledgement or probate must be under the hand and seal of the justice. At common law such acknowledgement or probate would not have entitled the deed to be given in evidence, and it is only by means of this statute that it becomes admissible ; which renders it indispensably necessary that the requirements of it should be fully observed and complied with, otherwise the deed can only be admitted after evidence has been given of its execution, according to the rules of the common law.

By the act of the 24th of February 1770, entitled " an act for the better confirmation of the estates of persons holding or claiming under *femes covert*, and for establishing a mode by which husband and wife might thereafter convey their estates" (*Purdon's Dig.* 196), the judges of the supreme court or any justice of the county court of common pleas of the county where the lands lie, are authorized to take the acknowledgement of deeds conveying lands by husband and wife, and to certify the same. Again, by the act of the 18th of March 1775, entitled "a supplement to the first act" (*Purdon's Dig.* 198), power is given to the judges of the supreme court and the justices of the common pleas of the

[Duncan v. Duncan.]

county where the lands lie to take the acknowledgement of all deeds and conveyances, or proof by one or more of the subscribing witnesses to them. So other acts since these have been passed, which are still in force, extending this power to other officers therein named; among which is one passed the 18th of March 1814, giving aldermen and justices of the peace of this commonwealth power to take the acknowledgement or proof of all deeds, conveyances, mortgages or other instruments of writing touching or concerning lands, tenements or hereditaments lying in any part of the state; giving to them the same power in this respect that had been previously given to the judges of the supreme court. But in all the acts passed on this subject since the first act of 1715, not a word is to be found directing or pointing out the manner in which the acknowledgements and probates so authorized to be taken shall be certified. Neither is there any thing tending in the least to show that the legislature, by any of these subsequent acts, intended or ever thought of dispensing with the seal of the officer that is expressly required by the terms of the first act to be affixed by him to his certificate of the acknowledgement or probate. These acts are all *in pari materia*, and must be construed as one act; the direction therefore contained in the first, that the certificate of the officer shall be under his hand and seal, must be considered as running throughout the whole, and prescribing the same mode for certifying acknowledgements or probates taken within the state by any of the officers to whom such authority has been given by these acts of assembly. I am aware that there is a very short note of a case, *Whitmire* v. *Napier*, 4 *Serg. & Rawle* 290, which seems to militate against this construction. It does not appear, however, that the point was argued, nor how the court came to the conclusion that is there mentioned; and I am strongly inclined to believe that it was done without argument, and without a full examination of all the acts of assembly on the subject: by them we are bound, and must make our decision accordingly; and after a careful examination of them all, I am convinced, beyond the shadow of a doubt, that whether the acknowledgement or probate be made before a judge of the supreme court, president or assistant judge of the common pleas, alderman or justice of the peace, within this state, it must be certified under his *hand and seal*, otherwise the deed or instrument can not be admitted in evidence, without other proof of its execution.

The decision of the circuit court is affirmed.